## State Bank of Harrisburg versus Rhoads.

1. The rule of evidence in this state that a party to commercial paper, negotiated in the ordinary course of business, before maturity, was incompetent to testify to anything tending to impeach its validity, before or at the time it passed out of his hands, is entirely changed by the Act of 1869, declaring that "no interest or policy of law shall exclude a party or person from being a witness in any civil proceeding."

2. All witnesses are now *prima facie* competent, so far as interest and policy of law are concerned. The design of the act was to make competent all who are not within the scope of the proviso; but it was not intended to convert into competent testimony that which was before incompetent.

March 7th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Berks county*: Of January Term 1877, No. 164.

Assumpsit by the State Bank of Harrisburg against Samuel L. Rhoads, as endorser on the following note:

"$10,000.              Harrisburg, Pa.; November 28th 1870.

Ninety days after date I promise to pay to the order of self, at the State Bank of Harrisburg, Pa., ten thousand dollars, without defalcation, for value received.        SAMUEL LINDEMUTH."

"Endorsed: Samuel Lindemuth, Isaac Liess, S. L. Rhoads, Wm. A. Moyer.

Protested March 1st 1871."

8 NORRIS—23

[State Bank of Harrisburg *v.* Rhoads.]

The facts, as stated in the opinion of this court, together with what follows, sufficiently illustrate the case.

At the trial, before Hagenman, P. J., the defendant made the following offer of evidence, which the court, under objection, admitted:

" To prove by the witness Samuel Lindemuth, that he came to Myerstown on or about the 27th day of August 1871, and there met Mr. Sturgeon, the cashier of the State Bank, who told him that he was glad to see him, and had intended coming to Stouchsburg, where the witness then lived, to see him; that it was best for the witness (who previously had paper to a considerable amount discounted by the bank) to get up a note for $10,000, properly endorsed, and place it with the bank as collateral security for the payment of such notes as he might thereafter send to the bank to be discounted; that this would save the witness the trouble of getting special endorsers on such notes; that witness thereupon suggested the names of the defendant and of the other endorsers on the note, as proper persons for endorsers, and that to this the cashier replied that they would do, and he should get them; that in pursuance of this arrangement and direction, the witness, for whose benefit, in the limited sense stated, the note was intended, called on the defendant in this suit, stated the conversation which he had with the plaintiff, the cashier, and prevailed upon him to endorse the note, of which the note in suit is a renewal, with the express agreement and understanding that such note should be placed with the bank as collateral security for the payment of such notes as Mr. Lindemuth might thereafter have there discounted; that with the defendant's and the other endorsements on the note it was given to Lindemuth, who in person took it to the State Bank, and then delivered it to the cashier for the purpose stated, and in pursuance of the previous arrangement with said cashier, and that the note was accepted by the cashier, who acted for the bank for the special and limited purpose above set forth:

" That nearly three months afterwards the cashier informed Mr. Lindemuth that the aforesaid note for $10,000 had to be renewed, and that thereupon the note in suit was made and the endorsement of the defendant and the other endorsers obtained as a renewal of the previous note, to be placed with the bank under the same arrangement and for a like limited and qualified purpose; and that the note in suit was in this way delivered to the cashier at the bank by Lindemuth, and that the cashier accepted the same as a renewal of the previous note, and that the defendant, at the time he endorsed the renewal note, had no knowledge whatever that the original note had been misapplied by the bank; to be followed up by evidence to show that the proceeds of the original note were applied to the payment of Lindemuth's previous indebtedness to the bank, which consisted of over-due notes, which the bank had

[State Bank of Harrisburg v. Rhoads.]

previously discounted for Lindemuth, and retained after the proceeds of the aforesaid $10,000 note had been thus applied."

The defendant also proposed to ask Lindemuth, "When you called upon the defendant for his renewal endorsement of note of 28th of November 1870, did you inform him that the original note had been discounted by the bank?"

The plaintiff objected, on the ground that the evidence was irrelevant, and that plaintiff could not be affected by any conversations between Lindemuth and Rhoads, at which they were not represented. The court permitted the question to be asked.

"The defendant also offered to prove that he endorsed the first $10,000 note to be placed with the plaintiff, as collateral security for such notes as Samuel Lindemuth (for whose accommodation the same was endorsed) might thereafter leave with and have discounted by the plaintiff, and that the said $10,000 note was not to be discounted, and that after endorsing the same, he handed it over to Lindemuth to be used only for the purpose stated; that some time before this note matured, the witness endorsed the note in suit to be used for the same purpose for which the previous note had been endorsed, and handed the same to Lindemuth; that such endorsements were made without consideration, and that witness did not know, when he endorsed the last note, that the previous one had been discounted by the bank in violation of his contract of endorsement."

This offer, under objection, was also admitted. In the general charge, the court, inter alia, said:

"If the jury find that it was agreed between Lindemuth and Sturgeon, that the note of August 27th should only be held as collateral security for subsequent discounts, and it was so endorsed by the defendant, and that the defendant had no knowledge when he endorsed the second note that the first had been discounted, it will then be the further duty of the jury to ascertain when the note of August 27th came into the possession of the bank. The liability of the defendant will start from that time; and for only notes, subsequently discounted, if any, is the plaintiff entitled to recover with interest from the time they were due."

Verdict for defendant, when plaintiff took this writ and assigned for error, inter alia, the rulings upon the above offers of testimony and the portion of the charge noted.

*George F. Baer* and *W. M. Derr*, for plaintiff in error.—The state bank, the plaintiff, discounted the note. The defendant was an endorser. The witness called was Lindemuth, the maker of the note. Under the rule of Walton v. Shelley, 1 Term Rep. 296, he was not a competent witness to prove the offer. The first question, therefore, is, did the Act of 1869 abrogate the rule of Walton v. Shelley, as defined and applied by our Pennsylvania cases?

[State Bank of Harrisburg v. Rhoads.]

The addition of the words "nor policy of law" in the Act of 1869, was intended to reach that class of witnesses who were not excluded by reason of a direct or substantial interest, but by a policy of law based on, or resulting from interest. The rule of Walton v. Shelley was not based on interest, but on principles of mercantile policy.

*A. G. Green* and *Josiah Funck*, for defendant in error.—To restrict the operation of the Act of 1869 to cases of public policy founded on interest, would simply be to make an exception of a general rule. Nor do we see any disposition so to confine it, the recent decision in Bierly's Appeal, 3 W. N. C. 210, having been ruled upon the exception contained in the act itself as to husband and wife testifying for each other. See, also, McClelland's Executor v. West's Administrator, for use, 20 P. F. Smith 183.

Mr. Justice STERRETT, delivered the opinion of the court, June 9th 1879.

Before the passage of the Act of 1869 it was a settled rule of evidence in this state that a party to commercial paper, negotiated in the ordinary course of business before maturity, was incompetent to testify to anything tending to impeach its validity, before or at the time it passed out of his hands. If, by the endorsements thereon, it appeared to have been regularly negotiated, he was not permitted to prove the contrary for the purpose of removing an apparently well-founded objection to his competency. To this extent we adhered to the rule in Walton v. Shelly, 1 Term Rep. 296, as modified by subsequent cases. The ground of exclusion was policy of law, not interest. The rule was based on "the impolicy of permitting one who had assisted to put into circulation a commercial instrument, afterwards, to aver a taint upon it at the time it passed through his hands :" Gilpin v. Howell, 5 Barr 41 ; Bank v. Walker, 9 S. & R. 229, and Barton v. Fetherolf, 3 Wright 279. Under the operation of this rule Lindemuth, the maker of the note in suit, would have been incompetent to prove the facts relied on as a defence in the court below; but the Act of 1869, declaring that " no interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding," has entirely changed our practice in this respect. All witnesses are now prima facie competent, so far as interest and policy of law are concerned. The design of the act was to make competent all who are not within the scope of the proviso ; but it was not intended to convert into *competent* testimony that which was before *incompetent*. The act operates not on evidence, but on persons, by removing the disqualification to testify which previously attached to them on account of the policy of law or personal interest in the subject-matter of the controversy. If not excluded by the proviso to the act, the witness

is competent to testify to whatever might have been proved before by any competent and disinterested witness. Tested by this principle, the witness Lindemuth was clearly competent. The main ground of defence in the court below was that the defendant Rhoads was an accommodation endorser for the maker; that the note, of which the one in suit is a renewal, was made and endorsed, in pursuance of a previous arrangement with the cashier that it should be given to the bank, to be held as collateral security for notes to be afterwards discounted for Lindemuth, the maker, and that, without subsequently discounting any paper for him, the bank undertook in violation of the agreement to hold the note as collateral security for his previous indebtedness. It was admitted by the cashier of the bank that the note was given and held as collateral security; but he claimed that it was collateral for pre-existing indebtedness and any paper that might afterwards be discounted. He testified that he met Lindemuth, the maker, and requested him to procure a note for $10,000, securely endorsed, for the purpose of holding it as collateral security for notes already discounted by the bank and for any that might be discounted in the future; that the note, duly endorsed, was delivered to him sometime afterwards and held as above stated. Hence, the main fact in dispute was whether the original note was given as collateral for pre-existing indebtedness and future discounts, or only as collateral for such discounts as Lindemuth might subsequently obtain. It was conceded that the note was received from Lindemuth for a special purpose, and on certain terms and conditions, with the knowledge that Rhoads was an accommodation endorser. On this branch of the case the only question was whether it was given for pre-existing indebtedness or for subsequent discounts only. If it was given and held for the purpose alleged by the defendant, and no discounts were subsequently obtained by the maker, it follows that the bank, in attempting to enforce collection of the note, was making a fraudulent use of it, both as against the maker and endorser. Under these circumstances it was clearly proper to prove what was alleged; and for this purpose Lindemuth was a competent witness under the act. Any objection that previously existed on the ground of interest or policy of law, on account of his being the maker of the note, was out of the way and there was no error in permitting him to testify.

The testimony as to the entire transaction was properly before the jury. The learned judge instructed them that if the plaintiff's version of the matter was found to be true, the verdict should be in favor of the bank for the amount of Lindemuth's indebtedness with interest. On the other hand, after stating to the jury what was claimed by the defendant as the true version of the transaction, he said: "If the jury find that it was agreed between Lindemuth and Sturgeon that the note of August 27th should only be

[State Bank of Harrisburg *v.* Rhoads.]

held as collateral security for subsequent discounts, and it was so endorsed by the defendant, and that the defendant had no knowledge when he endorsed the second note that the first had been discounted, it will then be the further duty of the jury to ascertain when the note of August 27th came into the possession of the bank. The liability of the defendant will start from that time; and for only such notes, subsequently discounted, if any, is the plaintiff entitled to recover, with interest from the time they were due." The questions of fact involved in the case were thus fairly submitted to the jury, who, by their verdict, in effect found that the note in suit was given to secure future discounts and that no such discounts were obtained.

The assignments of error to the admission of testimony are not sustained, and as the case stood upon the evidence before the jury there was no material error in the general charge or in the answers to points submitted.                    Judgment affirmed.